IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BANCROFT LIFE & CASUALTY,

    Plaintiff,                        12cv1431

                                      **ELECTRONICALLY FILED**

    v.

ERWIN LO, M.D., SUE JIN YU, M.D.,

    Defendants.

## MEMORANDUM OPINION

This is a breach of contract case. Before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaims and Brief in Support. Doc. nos. 25-26. Defendants filed a Response in Opposition to Plaintiff's Motion and filed additional documentation in the event this Court should construe the Motion to Dismiss to be a Motion for Summary Judgment under Rule 56. Doc. nos. 35, 35-1 through 35-8.

Plaintiff filed a Reply Brief to Defendants' Brief in Opposition (doc. no. 41) and Defendants filed a Sur-Reply to the Plaintiff's Reply Brief. Doc. no. 46. The matter is now ripe for adjudication.

## I. Standard of Review

### A. Rule 12(b)(3) [1]

Federal Rule of Civil Procedure, Rule 12(b)(3), requires that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading, *if* one is required. But a party may assert the following defenses by motion . . . (3) improper venue[.]"

---

[1] Plaintiff also moved this Court to alternatively consider its Motion to Dismiss for improper venue under 12(b)(3) as a Motion to Dismiss for improper forum selection under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). Plaintiff further suggests that a 12(b)(6) Motion to Dismiss for improper forum selection should be converted to a Rule 56 Motion. These arguments are noted, but for the reasons stated, *infra.*, the Motion will be denied.

When deciding whether a Motion to Dismiss brought pursuant to Rule 12(b)(3) should be granted, the United States Court of Appeals for the Third Circuit has held:

> We accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits. *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir.1998) ("Plaintiff contends that in responding to a motion to dismiss for improper venue, he was entitled to rely upon the well pled facts of his complaint. This is true, however, only to the extent that such facts are uncontroverted by defendant's affidavit."); see 5B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1352, at 324 (3d ed. 2004) ("Practice on a motion under Rule 12(b)(3) is relatively straight-forward. All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.") (internal footnotes omitted).

*Bockman v. First American Marketing Corp.*, 459 Fed.Appx. 157, 158, n.1 (3d Cir. 2012).

**B. Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a Complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II. Background**

The Court writes primarily for the benefit of the parties who are familiar with the facts of this case. Thus, the Court will not engage in a lengthy recitation of facts, but accepts as true, for purposes of deciding this Motion only, all well-pleaded facts set forth in Defendants' Counterclaims.

This case incepted with the filing of a Complaint by Plaintiff who claimed that Defendants, a husband and wife, both medical doctors, who maintain a medical practice in Texas, breached contracts with Plaintiff and sought damages for these breaches as well as a declaratory judgment seeking damages and attorneys' fees allegedly arising from the breaches. See Plaintiff's Complaint at doc. no. 1, ¶ 1, and Defendants' Answer and Counterclaims to Complaint at doc. no. 14, ¶ 3.

Defendants' Counterclaims state that they were "presented with the Bancroft [insurance] Program as a means to lawfully minimize the income taxes of [Defendants' Limited Partnership] and to afford them the benefits of a group captive insurance company." Doc. no. 14, Counterclaim ¶ 2. Defendants allege that in 2010, eight years after first becoming "involved with Bancroft[,]" the "loan documents" (those documents attached to the Plaintiff's Complaint and at the heart of this litigation), were "represented to them as necessary to have continued enrollment in the Bancroft Program." Id., ¶ 3. Defendants further allege that Plaintiff "fraudulently induced [Defendants' LP] to . . . participate in the Bancroft Program, and . . . to execute the Guarantees related thereto [which were among the documents attached to Plaintiff's Complaint], and . . . make the payments thereafter, in reliance upon a series of misrepresentations and failures to disclose by [Plaintiff] and written materials [Plaintiff] provided." Id., ¶ 24.

Defendants' fraud counterclaim provides specific examples of the alleged misrepresentations which purportedly took place, and which support Defendants' general allegation of fraud. Id., ¶ 25(a)-(r).

In addition to their fraud counterclaim, Defendants also advanced a counterclaim for illegality, averring that Plaintiff is not an admitted insurance carrier in either Pennsylvania or

Texas and failed to obtain a license or certificate of authority with either state's Department of Insurance. Id., ¶¶ 33, 35. Defendants suggest that because of this licensing failure, the "Bancroft Program was and is illegal." Id., ¶ 36. Defendants conclude that if the Bancroft Program is illegal, the agreements Defendants signed with Plaintiff cannot be enforced against Defendants. Id.

## III. Discussion

**A. Plaintiff's Motion to Dismiss Defendants' Counterclaims for Improper Venue under Rule 12 (b)(3)**

As noted above, Federal Rule of Civil Procedure, Rule 12(b)(3) requires that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading, if one is required. But a party may assert the following defenses by motion . . . (3) improper venue[.]"

### 1. Forum selection clause and venue

Plaintiff's 12(b)(3) argument primarily contends that Saint Lucia (not the Western District of Pennsylvania), is the proper venue for Defendants' Counterclaims, because of a forum selection clause, "found in the Group Master Policy[.]" Doc. no. 26, p. 3. Plaintiff argues that the forum selection clause identifies Saint Lucia as the proper venue for Defendants' fraud and illegality counterclaims. Id., p. 3.

In federal cases premised on diversity jurisdiction, such as the one presently before this Court, the effect to be given a contractual forum selection clause is determined by federal law rather than by state law because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991)). Under federal law, forum selection clauses are entitled to "great weight" and are presumptively valid. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir.

5

2006) (citing cases).  Of "paramount" importance is "the intent of the parties." *Id*. (citation omitted).

As noted by Plaintiff in its Brief in Support of its 12(b)(3) Motion, a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes: (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would, in the particular circumstances of the case, result in jurisdiction so seriously inconvenient as to be unreasonable. See, *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 846 (3d Cir. 2003) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).

Here, Defendants appear to be arguing that enforcement of the forum selection clause in the group master policy would violate strong public policy of this forum.  Doc. no. 36, pp. 3-9, doc. no. 46, pp. 1-5.  This Court agrees with Defendants for several reasons, although not all of them were explicitly articulated by Defendants in their briefing materials.

### 2. Balancing the forum selection clause and compulsory counterclaims

This Court begins by noting that Federal Rule of Civil Procedure 13(a) states in pertinent part as follows:

> (1) *In General*. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13.

The United States Court of Appeals for the Second Circuit in *Lesnik v. Public Industrials Corporation*, held as follows:

> Since the adoption of the federal rules, it has been recognized that important provisions as to the addition of parties under Rules 13 (counterclaims), 15 (third-party practice), and 24 (intervention) may have limited effect if requirements of federal jurisdiction and venue are necessarily to be applied to all such parties just as though they were being originally sued by the plaintiffs in the actions. These rules are a part of that fundamental tenet of modern procedure that joinder of parties and of claims must be greatly liberalized to provide at least for the effective settlement at one time of all disputes of which parts are already before the court. They should, therefore, receive such favorable construction as is possible, consistent with due recognition of the settled principle that procedural rules cannot be used to extend federal jurisdiction or venue.

*Lesnik,* 144 F.2d 968, 973 (2d Cir. 1944).

Since *Lesnik*, other courts, including the United States District Court for the District of New Jersey, have also addressed the intersection of compulsory counterclaims and venue. In *Wearly v. F.T.C.,* the New Jersey Court held:

> The mandatory counterclaim requirement is the closest that federal courts have come to the achievement of the laudable "single controversy" doctrine, under which all parties to a pending action in one court must assert in the same proceeding any and all related and connected claims.
>
> \* \* \*
>
> The principle is well-established that when the mandatory counterclaim rule applies, venue requirements that would otherwise control have no application. No other treatment could possibly achieve the worthy purposes of the mandatory counterclaim requirement.

*Wearly*, 462 F.Supp. 589, 606 (D.N.J. 1978) (citing *Lesnik, supra*).

To summarize the above-cited case law, which this Court finds instructive, and Fed.R.Civ.P. 13, a District Court is duty-bound to ensure that all related and connected counterclaims are made part of a pending action and disregard venue requirements that would otherwise control, as long as in doing so the Court does not extend federal jurisdiction or venue.

7

Turning to the instant matter, Plaintiff brought this breach of contract lawsuit in the United States District Court for the Western District of Pennsylvania, presumably due in part to the forum selection clause set forth in the documents (presumably the contract or contracts) attached to the Complaint it filed. Defendants, in response to the allegations set forth in the Complaint filed a responsive pleading which contained counterclaims alleging that the contract(s) was/were illegal and/or the Defendants were fraudulently induced into executing them. It is clear from Defendants' pleading that these counterclaims related directly to the allegations set forth in the Complaint, which, in turn, were premised upon the contract documents attached to the Complaint.

Thus, Plaintiff's contention that a forum selection clause set forth in the "Group Master Policy" – a document not attached to Plaintiff's Complaint and not the subject of Plaintiff's breach of contract claims against Defendants – controls where Defendants' Counterclaims for fraud and illegality must be brought, is not convincing. Defendants' Counterclaims for fraud and illegality brought all logically related claims pertaining to the contract(s) which was/were attached to the Complaint into a single litigation. Accordingly, the Court finds that Defendants' Counterclaims were compulsory with respect to Plaintiff's breach of contract claims, and call into question the validity and/or binding effect of the documents which were attached to Plaintiff's Complaint. The Court further finds that it is not extending federal jurisdiction or venue in this regard. Therefore, the Court finds that this is one basis upon which the Court must deny Plaintiff's 12(b)(3) Motion to Dismiss Defendants' Counterclaims for improper venue.

Not only does the Court find that enforcing the Saint Lucia forum selection clause contravenes Fed. R.Civ.P. 13, given that the contract containing this clause was not included by Plaintiff in its original breach of contract claims against Defendants nor attached to the Plaintiff's

breach of contract Complaint, and likewise, the contract does not appear to be the subject of the fraud and illegality Counterclaims raised by Defendants, enforcement would violate strong public policy of the forum concerning the law of the case doctrine.

    3.      **Law of the case**

As noted by Defendants (see doc. no. 46), this Court has had an opportunity to rule on the Plaintiff's previously filed Motion for Summary Judgment, requesting that a declaration be entered in Plaintiff's favor. See doc. no. 5. When the Court denied Plaintiff's Summary Judgment Motion, it noted that Defendants' declarations provided facts, which, if proven, called into question to the validity (and possibly the legality) of the documents attached to the Complaint and Plaintiff's breach of contract claims. Doc. no. 33, p. 7. This Court held that under Pennsylvania law, fraud is a basis for rescission of a contract, and thus, concluded that discovery related to fraud and illegality could be conducted.

Given that this Court has already determined that it is proper to allow discovery on the fraud and illegality issues raised by Defendants' Counterclaims with respect to the contracts which were attached to the Complaint, this is now law of the case. Accordingly, the Court will deny the Plaintiff's 12(b)(3) Motion to Dismiss Defendants' Counterclaims for fraud and illegality.

   **B. Plaintiff's Motion to Dismiss Defendants' Counterclaims under Rule 12(b)(6)**

Plaintiff next contends that Defendants' Counterclaims should be dismissed under Rule 12(b)(6) because Defendants (two individuals) lack standing to sue Plaintiff for fraud and illegality. Plaintiff points out that only "SJYEL Ventures, LP" is the certificate holder on the policy(ies) of insurance, and further notes that Defendants admit that "SJYEL," not the individual Defendants, entered into the insurance contract(s). Doc. no. 26, p. 16.

Importantly, the individual Defendants executed the documents which Plaintiff attached to its Complaint and alleges were breached. Defendants note that they may be classified as "guarantors" and as such, generally lack standing to bring an action where the only harm suffered is derivative of the harm the corporation suffers. However, Defendants contend that their Counterclaims, which are "squarely based on [Plaintiff's] fraud, misrepresentations and wrongdoing . . . separately and distinctly induced them [as individuals] to execute the Guarantees." Doc. no. 35, p. 14.

Courts have concluded that guarantors can bring a claim for injury. See e.g. *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989) ("[There are situations – especially in the case of a closely held corporation – where the relationship between the corporation and the guarantor, combined with the conditions directly imposed by the bank on the guarantor, may require that the guarantor have standing to bring such actions."), citing *Swerdloff v. Miami Nat. Bank,* 584 F.2d 54, 58-9 (C.A. Fla. 1978).

Here, based solely on the averments set forth in Defendants' Counterclaims, the Court finds that Defendants have pled sufficient facts to allege plausible, individual, claims for fraud and illegality. Thus, Plaintiff's Motion to Dismiss Defendants' Counterclaims for lack of standing will be denied.

**C. Plaintiff's Motion to Dismiss Defendants' Declaratory Judgment Counterclaim (Count VI)**

Plaintiff also posits that Defendant's Counterclaim for Declaratory Judgment (Count VI) should be dismissed because it is "entirely duplicative of [Plaintiff's] principal claims for breach of contract and declaratory judgment." Doc. no. 26, p. 14. Plaintiff contends that Count VI should "properly be dismissed as redundant." Id.

It is clear that Defendants' Counterclaim for declaratory judgment arises out of the same contract(s) that Plaintiff contends Defendants breached and thus, Defendants' request for declaratory judgment arises out of the same substance behind Plaintiff's original claim.

The Court notes that other District Courts within the Third Circuit have addressed this issue and have developed some criteria upon which the termination of declaratory judgment counterclaim is appropriate.

First, even when the original claim and counterclaim rest upon an identical set of facts, if judgment in the counterclaimant's favor would yield additional legal repercussions related as to how the parties would abide by a contract, then dismissal of the counterclaim is inappropriate. *Perelman v. Perelman,* No. 09–4792 , 2012 WL 6645542 (E.D. Pa. Dec. 21, 2012). Stated another way, if granting declaratory judgment in favor of the counterclaimant is more than "symbolic" and would serve a "useful purpose," then dismissal of that declaratory judgment counterclaim is not appropriate. *De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, No. 06–2319, 2009 WL 678625, at *7 (E.D. Pa. Mar. 16, 2009).

Second, if the counterclaimant's declaratory judgment would affect the future behavior of the parties, then dismissal of such a counterclaim would not be appropriate. The Declaratory Judgment Act cannot be used to obtain declaratory relief solely to adjudicate past conduct or to proclaim that one party is liable to the other based upon that conduct. *Corliss v. O'Brien*, 200 Fed. Appx. 80, 84–85 (3d Cir. 2006).

At this juncture of the legal proceedings, as noted by Defendants, it appears as though Defendants' Declaratory Judgment counterclaim, while predicated upon the same documents that form Plaintiff's Declaratory Judgment claim, may involve offset issues distinct from Plaintiff's own claim. Accordingly, the Court will exercise caution and will not dismiss Defendants'

Declaratory Judgment counterclaim at this time, without prejudice to Plaintiff to re-raise this matter before trial.

**IV. Conclusion**

Based on all of the foregoing law and authority, Plaintiff's Motion to Dismiss Defendants' Counterclaims will be denied. An appropriate Order shall follow.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel