IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BANCROFT LIFE & CASUALTY,

    Plaintiff,                                  12cv1431
                                                            **ELECTRONICALLY FILED**

       v.

ERWIN LO, M.D., SUE JIN YU, M.D.,

    Defendants.

**MEMORANDUM OPINION
RE: DEFENDANTS' MOTIONS FILED AT DOC. NOS. 247 AND 262**

Before the Court are two Motions filed by Defendants: one is a Motion *in Limine* to Exclude Evidence Regarding any "Pre-2010 Loans" Bancroft made to Defendants (doc. no. 262); and the other is a Motion for Judgment as a Matter of Law (the "Rule 50 Motion") and a Supplement thereto, to dismiss Bancroft's claims in their entirety. Doc. nos. 247 and 251. Bancroft has responded to both Motions (see doc. nos. 265 – Bancroft's Response to Defendants' Motion *in Limine;* and doc. no. 267 – Bancroft's Brief in Opposition to Defendants' Rule 50 Motion) and thus, the matters are ripe for consideration. The Court has chosen to address both issues in one Opinion in light of the fact that the "pre-2010 loans" issue is the focus of the Motion *in Limine* but also has some bearing on the Rule 50 Motion.

**I. Introduction**

The relationship between Plaintiff, "Bancroft," and Defendants was forged years ago. Bancroft claims that the relationship was created when Defendants sought insure their business – a medical practice – through Bancroft, an "offshore insurer," in order to reap the taxation benefits of being a participant in an offshore insurance program. Defendants essentially claim

1

they were duped into the relationship by fraudulent misrepresentations and other fraudulent actions made and taken by Bancroft.

Bancroft's Complaint asserts two causes of action against Defendants – the first cause of action seeks damages for a breach of two (2) contracts, and the second cause of action seeks a declaration that Bancroft is entitled to recover a set amount as a result of the purported breaches. The contracts Bancroft placed at issue in its case-in-chief are described as "Guarantee Agreements," whereby the individual Defendants guaranteed repayment of two (2) loans made to a corporate entity Defendants essentially owned. The documents attached to Bancroft's Complaint indicates that one of the loan agreements was dated January 7, 2010 (doc. no. 1-1); and the other was dated January 12, 2010 (doc. no. 1-5). According to the Complaint, the total principle amount of these two loans was $1,302,000.00. Doc. no. 1.

Defendants, beginning with their Answer and Counterclaims, and consistently throughout the course of this litigation, have urged this Court not to view the two January 2010 loans in a vacuum; bur rather, insisted that the "Bancroft Program" as whole had be understood by this Court in order for the Court to correctly interpret the contractual documents set before it. See, generally, doc. no. 14. Defendants contend that when the entirety of the Bancroft Program is considered, the outcome would be that Bancroft owes Defendants money under the terms of other contractual documents which create the "Bancroft Program," and Defendants owe Bancroft nothing. Defendants' position was/is predicated primarily upon their belief that Bancroft had engaged in "fraud," thereby rendering the two (2) contracts Bancroft placed at issue in its case-in-chief void or voidable – along with all of the other contracts which comprised the "Bancroft Program," thereby entitling them to rescission or monetary damages.

At the close of discovery, this Court granted in part and denied in part Bancroft's Motion

for Partial Summary Judgment. Doc. nos. 153-154. Defendants' Counterclaim for Fraud (*inter alia*) survived Bancroft's Motion for Partial Judgment. Id.

Prior to the start of trial, Defendants filed a Motion in Limine to Preclude Evidence Related to Purported 100% Early Surrender Penalty and Five-Year Rolling Premium Return Benefit. Doc. no. 173. After receiving Bancroft's Brief in Opposition (doc. no. 194), the Court granted Defendants' Motion thereby precluding Bancroft from presenting any evidence concerning the alleged 100% early surrender penalty and the five-year rolling premium return benefit. Doc. no. 219. The preclusion of this evidence at the motion *in limine* stage triggered Defendants' currently pending Rule 50 Motion, filed prior to the start of the trial of this matter (with an advisory jury), and the instant Motion in Limine to preclude evidence of any pre-2010 loans.

## II. Discussion

### A. The Court's Prior Ruling (doc. no. 219)

In its prior Order, the Court held that Bancroft could not present any evidence concerning the 100% surrender penalty nor the five-year rolling premium return benefit. Because the Court did not provide an Opinion as to why it granted Defendants' Motion *in Limine* to preclude this evidence (doc. no. 173), the Court will now endeavor to do so, as it has become apparent that the parties are having difficulty disentangling Bancroft's Claims from Defendants' Counterclaims and the evidence relevant to prove and defend against each claim and counterclaim.

The primary reason the Court granted Defendants' prior Motion ("Motion *in Limine* no. 173") was because Bancroft's breach of contract claim was predicated solely upon two (2) contracts. Neither of those contracts – which were placed at issued by Bancroft in its case-in-

chief, contained a term concerning either a 100% surrender penalty or a five-year rolling premium return benefit. Thus, the Court entered an Order (doc. no. 219) precluding Bancroft from presenting any evidence on its Breach of Contract or Declaratory Judgment claim that related to either a 100% surrender penalty or a five-year rolling premium return benefit.

Importantly, throughout its Brief in Opposition, Bancroft failed to point to documentary evidence of record in support of its contention that it was entitled to either a 100% surrender penalty or a five-year rolling premium return benefit; instead, Bancroft argued that indebtedness of a corporate entity, essentially owned by the individual Defendants and insured by Bancroft ("SJYEL Ventures"), "was greater than both the amount of any premium return benefit and the amount of SJYEL's allocable share of Bancroft's reserves as of March 31, 2011," thereby entitling Bancroft "to collect on the Guarantee Agreements regardless." Doc. no. 194, p. 4.

Bancroft primarily argued that Defendants had not met a threshold requirement of showing that they were entitled to a return of their premium. Bancroft argued that this matter had be decided first, and only after this decision, would the Court and/or a fact-finder need to discern whether Bancroft was entitled to either a 100% surrender penalty or a five-year rolling premium return benefit. Secondarily, Bancroft argued that Defendants failed to point out "what written agreements or communications supply the complete terms of the contract that governs any premium return benefit that Bancroft could theoretically owe SJYEL [Ventures]." Id. at p. 10. Bancroft further suggested that because the parties disagreed as to "what is included in the terms of the applicable contract and because the terms of the Group Master Policy and certificates of insurance addressing the premium return benefit contain both patent and latent ambiguities," the Court was required to send these issues to the advisory jury and allow them to consider parol evidence to discern the parties' intent with respect to these issues. Id. at pp. 10-

4

11. Bancroft further contended that the parol evidence would strongly support a factual finding that "the intent of the parties was to have a premium return benefit calculation based on the number of years that had passed since each premium payment was made, and not the number of years SJYEL had been in the program—and thus that early surrender penalties would apply." Id. at 15.

The Court disagreed with Bancroft's position for several reasons. First, as noted above, Bancroft can place no evidence into its case-in-chief concerning either a 100% surrender penalty or a five-year rolling premium return benefit. The contract documents that Bancroft sued upon do not contain such terms.

Second, to the extent that Defendants placed such documents containing said contractual terms at issue by virtue of their assertions set forth in any affirmative defense or counterclaim, Bancroft's Brief in Opposition to Defendants' Motion *in Limine* no. 173 failed to identify that document(s). The Court notes that Bancroft attached numerous documents to their Brief in Opposition, but not one was a document wherein it was explicitly stated that Bancroft would be entitled to either a 100% early surrender penalty or five-year rolling premium return benefit.

Third, by urging this Court to allow a jury to consider parol evidence as to parties' intent (presumably with respect to whether either a 100% surrender penalty and/or a five-year rolling premium return benefit would apply in this case), Bancroft all but admitted in its Brief in Opposition to Defendants' *Motion in Limine* no. 173 that there was no document which contained the precise words concerning the applicability of either a 100% surrender penalty or a five-year rolling premium return benefit. Parol evidence is not considered unless a term is ambiguous. See *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 93 (3d Cir. 2001). Here, Bancroft failed to present the Court with a document wherein it was explicitly

stated that Bancroft would be entitled to either a 100% early surrender penalty or five-year rolling premium return benefit, nor any alleged "ambiguity."

However, as noted by Bancroft, an ambiguity (under Pennsylvania law) may be either patent or latent. A "patent ambiguity appears on the face of the instrument, 'a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous.'" *Id*., quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir.1995). The Court of Appeals in *Bohler-Uddeholm* further noted, "[a] party may use extrinsic evidence to support its claim of latent ambiguity, but this evidence must show that some specific term or terms in the contract are ambiguous; it cannot simply show that the parties intended something different that was not incorporated into the contract." *Id*.

Accordingly, this Court determined that the lack of a document containing a term concerning the applicability of either a 100% surrender penalty or a five-year rolling premium return benefit to the matter at hand rendered Bancroft's argument null, because there was no term that could be rendered "ambiguous." Therefore, the Court entered its Order (doc. no. 219) which effectively precludes Bancroft from offering any evidence concerning: (1) the purported a 100% surrender penalty or (2) a five-year rolling premium return benefit either in its case-in-chief or as a defense to any of the Defendants' remaining Counterclaims.

Therefore, the Court reiterates what was stated in doc. no. 219, as follows: Defendants'/Counterclaim Plaintiffs' Motion *in Limine* to Preclude Evidence Related to Purported 100% Early Surrender Penalty and Five-Year Rolling Premium Return Benefit (doc. no. 173) is granted, and Bancroft is precluded from offering any evidence in this regard.

### B. Motion *in Limine* to Exclude Evidence Regarding "Pre-2010 Loans" (doc. no. 262)

Next, the Court considers Defendants' Motion *in Limine* to Exclude Evidence Regarding "Pre-2010 Loans" and Other Loans Not At Issue or Sued Upon in This Litigation (doc. no. 262) and Bancroft's Brief in Opposition to same. Doc. no. 265.

The Court first notes that "pre-2010 loans" were not explicitly addressed by Court Order no. 219. That matter was limited to the 100% surrender penalty and the five-year rolling premium return benefit. That Order precluded Bancroft from offering any evidence with respect to those two discrete matters.

Defendants' current Motion *in Limine* seeks to exclude evidence concerning loans made by Bancroft to Defendants prior to the two (2) January 2010 loans placed at issue by Bancroft through its Complaint. The Court will grant in part and deny in part this Motion *in Limine* for the reasons set forth below.

The Complaint filed by Bancroft raises a breach of contract claim and a claim for declaratory judgment with respect to two loans only – one that bears a date of January 7, 2010, for the amount of $672,000.00 (doc. no. 1-1); and one that bears a date of January 12, 2010, for the amount of $630,000.00 (doc. no. 1-5). Therefore, Bancroft is only permitted to recover damages (if any) for any proven breach on those two (2) contracts. It is not permitted to recover for any proven breach of any other contract. Accordingly, Defendants' Motion *in Limine* will be granted in this respect and thus, Bancroft is not permitted to offer evidence to prove that it sustained recoverable damages for the breach of any "pre-2010" or other contract. Stated another way, Bancroft is only permitted to offer evidence to prove that it sustained recoverable damages for the two (2) contracts that were attached to its Complaint – one dated January 7,

2010, and one dated January 12, 2010.

However, the Court notes that Defendants placed "the Bancroft Program" at issue in this case through, *inter alia*, their fraud claim. To date, Defendants have not elected whether they will move for rescission of the contracts due to the alleged fraud *ab initio,* or whether they will seek monetary damages including punitive and exemplary damages as a result of the alleged fraud. Either way, the Court further notes Defendants will attempt to prove through other "Bancroft Program" documentation (not just the few documents which were attached to Bancroft's Complaint) and testimony, that even if they were in default on the two (2) loans placed at issue by Bancroft, they are entitled to prove SJYEL Ventures – and by extension the Defendants themselves – are not indebted to Bancroft because of these other documents or contracts or contract terms affiliated with the "Bancroft Program," and/or because of Bancroft's purported fraud related thereto.

Thus, Bancroft is entitled to defend itself from the fraud and other remaining counterclaims which call into question the entire Bancroft Program with documentation beyond the documents comprising the two (2) loans. Accordingly, Defendants' Motion *in Limine* will be denied in this regard so as to permit Bancroft to offer evidence of the pre-2010 loans and other loans guaranteed by these Defendants which were related to the Bancroft Program. Simply put, if Defendants raise the "Bancroft Program" in Defendants' case-in-chief, Bancroft may use the pre-2010 contracts or other Bancroft Program documentation/evidence in defense of the Counterclaims.

**C. The Motion Rule 50 Motion and Supplement (doc. nos. 247 and 251)**

Defendants filed a Rule 50 Motion essentially arguing that in light of Court Order no. 219, which precludes Bancroft from presenting any evidence concerning a 100% surrender

penalty or a five-year rolling premium return benefit, this Court should grant judgment as a matter of law in their favor. Defendants claim that Court Order no. 219, coupled with numerous judicial admissions made by Bancroft in its pleadings and briefs, leads to a simple math equation which illustrates that Bancroft has sustained no damages as a result of Defendants' purported breach of contract claim. Accordingly, Defendants reason that if Bancroft has sustained no damages as a result of Defendants' breach, no viable breach of contract claim and no a claim for declaratory judgment exist.

Bancroft's Opposition to the Rule 50 Motion first attacks the Motion on a procedural – not a substantive – basis. Bancroft claims that this "mechanism" (referring to a Rule 50 Motion) is not available to Defendants because this is a non-jury trial with an advisory jury, and Rule 50 Motions are only appropriate in jury trial situation. Doc. no. 267, p. 3, citing to *Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 626 (3d Cir. 1990). The Court concurs that this position is the law of this Circuit.

However, at least one District Court within the Third Circuit has recently construed a Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50, as a Motion for Judgment on Partial Findings under Federal Rule of Civil Procedure 52(c). See *Warner Chilcott Laboratories Ireland Ltd. v. Impax Laboratories, Inc.,* 2012 WL 1551709, *7 (D.N.J. April 30, 2012), comparing Fed.R.Civ.P. 50(a)(1) (motion for judgment as a matter of law may be made after "a party has been fully heard on an issue during a jury trial"), with Fed.R.Civ.P. 52(c) (motion for judgment on partial findings may be made after "a party has been fully heard on an issue during a nonjury trial").

Moreover, there is no case law on point within the Third Circuit that this Court could locate to provide it with guidance on what "type" of motion is more appropriate in the instance

9

of an "advisory jury." Bancroft provided law from other Circuits which this Court has reviewed and found instructive.

Accordingly, the Court will construe the pending Rule 50 Motion and its Supplement (doc. nos. 247 and 251) as a Motion for Judgment on Partial Findings (and a Supplement thereto) as if they were filed under Federal Rule of Civil Procedure 52(c). The Court will defer ruling on this Motion and Supplement until trial.

### III. Conclusion

The Court will grant in part and deny in part Defendants' Motion *in Limine* to Exclude Evidence Regarding "Pre-2010 Loans" and Other Loans Not At Issue or Sued Upon in This Litigation (doc. no. 262) in accordance with the Opinion set forth herein.

The Court will construe the documents filed at Doc. nos. 247 and 251 as a Motion for Judgment on Partial Findings and a Supplement thereto filed under Federal Rule of Civil Procedure 52(a). The Court will defer ruling on this Motion and its Supplement until such time as all evidence has been presented in Bancroft's case-in-chief and upon Defendants' oral or written motion.

An appropriate Order of Court will follow.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All counsel of record